## LEVENSON v. BUSH et al.

District Court, S. D. New York.

Aug. 11, 1930.

Archibald Palmer, of New York City (Chauncey H. Levy, of New York City, of counsel), for plaintiff.

Phillips, Mahoney, Leibell & Fielding, of New York City (Edw. H. Beck, Jr., of New York City, of counsel), for defendant Bush.

FRANK J. COLEMAN, District Judge.

A petition in bankruptcy was filed against defendant Allied Finance Agency, Inc., on April 18, 1927, and after adjudication plaintiff qualified as trustee. On March 15, 1927, the bankrupt had conveyed to defendant Bush, who was an officer and director, its principal asset, which consisted of two and one-tenth acres of vacant land in Westchester county. At the time of the conveyance the bankrupt was hopelessly insolvent.

The value of the land was about $2,500 at the time of the conveyance and also at the time of the trial. The evidence of this was introduced by defendant Bush and is of little weight; but it is uncontradicted. The property is in an undeveloped section between Irvington and Elmsford, and has no road frontage, but a right of way over other land. About one-third of it is an abandoned quarry 50 feet deep, which is not only worthless but a detriment to the remainder. The parcel was assessed at $2,500 for the year 1930, and a young real estate man testified that such was its value. Since there were $100 due for taxes at the time of the conveyance, I find that the value of what Bush received was $2,500.

It is conceded that at the time of the transfer Bush parted with $2,500 in cash, but the trustee contends that this did not inure to the benefit of the bankrupt. In addition to that sum, I am convinced that Bush surrendered notes of the bankrupt in the aggregate of $900 which contained a collateral agreement to give a mortgage for that amount on the land in question. The existence and surrender of notes with a collateral mortgage agreement is disputed by the plaintiff, but there can be no doubt that Bush did advance $900 to the bankrupt several months before the transfer, because his checks are in evidence. The notes themselves are no longer available because the trustee has not found them. I believed the testimony of Bush and of Joy that the notes were made at the time the $900 was advanced and that they contained the mortgage agreement.

It only remains to be considered whether the bankrupt was chargeable with the $2,500 in cash paid by Bush at the time of the conveyance. The bankrupt was one of a group of five corporations whose affairs and assets were hopelessly intermingled. They all occupied an office consisting of one small room and had interlocking, if not identical, directorates. What their purposes and interrelations were it is impossible to determine from this record. It does appear, however, that they had only one active bank account which was in the name of one of the corporations, the Federal Associates, Inc.

Bush was an officer and director of some of these corporations, including the bankrupt, but he did not take an active part in their management. He was a practicing osteopath who had become interested to the extent of investing some of his spare cash in the enterprise after it had started. In the early part of 1927 Bush loaned the bankrupt the $900 mentioned on the security of the mortgage agreements, and when he was solicited for a further loan of $2,500 on the same security, he said he would prefer to purchase the property for $3,400 and make payment for it by surrendering the notes for $900 with the collateral mortgage agreements and delivering the remaining $2,500 in cash. This plan was adopted and Bush surrendered

the notes and gave his personal check to the order of the bankrupt for the sum of $2,500. Before cashing this check, however, the active manager of the enterprise determined it would better suit his convenience to have several cashier's checks instead of it, so he and Bush went to the latter's bank and Bush delivered to the bank his check to the bank's order for $2,500, at the same time instructing the bank to deliver to the manager such cashier's checks as the latter might request, aggregating that sum. Bush then left the bank and the latter thereafter delivered to the manager three cashier's checks aggregating $2,500 and all payable to the Federal Exchange Corporation, which was one of the allied group.

Of these three cashier's checks, the Federal Exchange Corporation delivered one for $1,464.08 to an insurance company in payment of a debt owed by the Federal Exchange Corporation. The other two were deposited in the bank account of the Federal Associates, Inc., which was the only account held by the group, and the proceeds were disbursed in regular course. None of the money ever found its way back to Bush. All of it was used in the business of the allied group. There was no possible advantage to Bush in not delivering the $2,500 directly to the bankrupt, as he had originally done, and in having cashier's checks issued to the allied corporation.

I am convinced that the bankrupt did get the benefit of the $2,500 just as much as if it had been paid directly. The fund was furnished to the bankrupt by Bush and was disbursed according to the bankrupt's directions. The bankrupt was in a common enterprise with the other corporations and the money concededly was used in that enterprise. Just which corporation was legally liable for the particular debts paid with proceeds of the checks, I do not think is important, because as a business proposition the members of the group were bound up together.

Apparently the Federal Associates, Inc., acted as a sort of disbursing agent for the others because it had the only active bank account, and no real effort was made to keep their assets separate. The books are in hopeless confusion, but they indicate that on March 15th when the cashier's check for $1,-464.08 was applied in payment of the indebtedness of the Federal Exchange, Inc., to the insurance company, the bankrupt was indebted to the Federal Exchange, Inc., for more than $1,700; and that the Federal Associates,

Inc., had disbursed hundreds of dollars of the common funds on behalf of the bankrupt.

Under all the circumstances, I find that Bush paid a present consideration equal to the value of the property and that the creditors were in no way defrauded. Judgment for respondents.